## Shuman v. Shuman

*Walter S. Young*, for exceptant.

SHANAMAN, J., January 21, 1946.—This was an action in divorce and the ground alleged was desertion. The master filed his report on December 20, 1945. In it he found in fact that the separation had taken place June 20, 1941, and that since that date libellant and respondent have not lived or cohabited together. The master stated that libellant knew that respondent was interested in and going with another woman; that on one occasion when she discussed the matter with respondent, he told her that he was going to leave her the following Friday; that when she came home from work on that Friday, respondent had gone, and had taken his clothes and had left the key on the table. The master finds that respondent has never made any attempt to effect a reconciliation and has never offered to return to libellant and resume the marital relation. The master further finds that there was no legal justification for respondent's leaving libellant, and that his departure is an unlawful and malicious desertion.

The master, however, recommended a dismissal of the libel on the ground that since during a part of the two years and upwards that have elapsed, respondent was in the military service of the United States of America, such period must under the law be deducted and not counted against him, and that as a result, the

libellant has failed to show a continuous desertion and absentation, in the sense of the law, for two years. We are of opinion that the period of military service does not automatically drop out of consideration in computing the period of the wilful and malicious desertion and absentation, but that the effect to be given such military service must be considered in connection with all circumstances relevant to the deserter's intent and its persistence.

In the present case the desertion took place June 20, 1941. The master finds that 10½ months later respondent was drafted into the military service, and that during his military service, respondent made no offer to return, but on the contrary, wrote libellant a letter indicating that he still intended to desert and did not intend ever to renew the marital relation. Respondent was discharged from the Army on August 8, 1945. The master finds that respondent thereupon resumed work at the same company at which libellant is employed, and had ample opportunity to speak to his wife and to offer to resume the marital relation, but has not done so. In the syllabus of Ward v. Ward, 117 Pa. Superior Ct. 125, the general rule was laid down that:

"Where a husband or wife separates from the other without reasonable cause or legal justification and the other spouse does not direct or consent to the separation, either expressly or by fair implication, the departure from the common home in such case is a wilful and malicious desertion and continues to be such until the deserting spouse in good faith seeks a reconciliation and offers to go back and resume marital relations."

The Soldiers' and Sailors' Civil Relief Act is intended to protect persons in the military service against any prejudice to their rights by reason of their service. Act of October 17, 1940, 54 Stat. at L. 1178, 1181, sec. 205 as amended October 6, 1942, sec. 5, 56 Stat. at L. 770, 50 U. S. C. A. App. 525. It does not prevent a showing that the defendant had actually no defense to the

charge of wilful and malicious desertion and absentation for a continuous period of two years. Adjudicated cases are not rare in which the fact that part of the statutory two years was spent by respondent in the military service, did not prevent a finding that the desertion and absentation were wilful, malicious and continuous during the period. Of course if defendant is still in the military service, the right to a final judgment may be restricted. In Dewell v. Dewell, 69 Pitts. L. J. 384 (1921), the desertion took place three months before respondent entered the military service. Respondent was in the military service approximately one year. The libel was filed one year and six months after respondent's discharge from the military service. The court granted the divorce. In Mack v. Mack, 32 Del. Co. 246, respondent deserted libellant on November 15, 1939, entered the military service in January or February of 1941, and was still in the service at the time a divorce was granted. In Kantra v. Kantra, 53 D. & C. 364, respondent left his wife May 10, 1942, and entered the army in July 1942. The court recommitted the case to the master in order to ascertain whether the defendant voluntarily entered the service, and held that if the enlistment was not voluntary, the period of service must automatically drop out of any computation of the two years. While this decision furnishes the authority for the master's recommendation that the libel be dismissed, we cannot agree with it, and in fact the opposite view has been taken, on more carefully considered grounds, in the recent case of Hutcheson v. Hutcheson, 54 D. & C. 630 (Fayette County, 1945, Carr, J.). It is only fair to state that the latter authority had not been submitted to the learned master. In the Hutcheson case, the husband was inducted in the United States Army, under the provisions of the Selective Training and Service Act, a few days after he had deserted his wife. The court said:

"Manifestly the induction of a deserting husband into the armed forces may put it beyond his power to return to his wife until he is released, and therefore it is clear that if the record disclosed nothing more than the respondent's abandonment of his wife and his induction within two years thereafter, his continued absence could not properly be adjudged voluntary. But in the face of the clear and convincing proof that has been made of his fixed intention to desert, steadfastly maintained to the present time, it would seem unreasonable to regard his failure to return as attributable to military restraint. His attitude toward his wife was on every occasion so inflexible and insensitive to all entreaties that it is inconceivable that mere physical freedom could have altered it. Indeed, the evidence revealed that his furloughs afforded him repeated opportunities to resume matrimonial cohabitation and thereby terminate his desertion, all of which he obstinately rejected. Hence, we conclude that the continuity of his desertion was not interrupted by his involuntary military service, and accordingly a decree of divorce will be entered: . . ."

The decision in the Kantra case, which we do not follow, appears to be based upon a statement by Freedman in his book on Marriage and Divorce, sec. 227, wherein, in speaking of the compulsory induction into the military service, it is said:

"In all such cases the continued absence of the respondent is not intentional, but is the result of necessity, springing from circumstances personally uncontrollable. . . . His absence, being under necessity, is free of an intent to desert."

The text writer's statement confuses absence of respondent in the army with absence of respondent from libellant. His absence in the army may be unintentional and certainly he cannot control it, but

his absence from libellant may in fact have been personal and intended. The circumstances and the evidence may demonstrate that respondent's absence was personal and intended, whether respondent was in or out of the military service. There is clearly a difference in intent between respondent in Hutcheson v. Hutcheson, supra, or respondent in the present case, and the ordinary married draftee, who just before entraining, spends his last minute at the railroad station in the arms of his wife. The fact of induction and compelled absence in the service is, of course, important, and prima facie an inference from it favorable to respondent should not be overlooked. When, however, a careful review of the circumstances leaves no doubt of respondent's "fixed intention to desert, steadfastly maintained to the present time," it would be indeed unreasonable to disregard by arbitrary rule of law the time spent by the wife-deserter in the military service. Under such circumstances, the continuity of the desertion is not necessarily or ipso facto interrupted by the compulsory military service, and the failure of respondent to return is not then as a matter of law attributable to military restraint. The circumstances in the present case, in many respects, resemble those in Hutcheson v. Hutcheson. We therefore recommit the case to the learned master in order that, in the light of the legal principles herein laid down, he may make a further finding of fact upon the question whether respondent has had a fixed intention to desert libellant and has steadfastly maintained it for a period of two years and upwards, from June 20, 1941, the date of the separation, and that the master may make an appropriate conclusion of law and recommendation to the court thereon.

And now, to wit, January 21, 1946, the case is recommitted to the master.