## McNerney v. McNerney

*H. Joseph Harrison,* for libellant.
*H. Lester Haws,* for respondent.

PER CURIAM, April 4, 1946.—In keeping with a pronounced National trend, the number of divorce cases in Montgomery County has increased very materially during the last five years, and continues to increase. It may be that the excitement of the times and the emotionalism caused by wartime conditions, has led to many hasty and ill-considered marriages, which the parties now wish dissolved. It may be that the large increase in money in the hands of the people, due to high wages and the employment of women, has made it financially possible for many to obtain divorces which they formerly could not afford because of the cost. It may be that the dislocation of our population and the concentration of large numbers in centres of war industry has brought about a loosening of marital ties and home interests. It may be that the absence of hus-

bands serving in the armed forces has caused some wives to seek the companionship of other men, often to their sorrow.

Whatever may be the cause or causes, the fact remains that the number of divorce actions in this court has increased enormously. The overwhelming majority of the cases are uncontested, and in many the record discloses that although there may be no collusion as to the causes alleged for the divorce, there has been cooperation by respondent in facilitating the processes of the law and speeding the cause.

We have noticed also a great change in the causes upon which divorces are sought. A decade or so ago the usual cause alleged was desertion; now the majority of cases are based on cruel and barbarous treatment, or indignities to the person.

The appellate courts have never precisely defined "cruel and barbarous treatment or indignities to the person", because of varying circumstances and conditions existing in different cases. What may be cruel and barbarous treatment or indignities to the person, in one case, may not be so considered in another. The age, degree of education, culture and refinement of the parties; the attitude and state of mind of the offending spouse; the kind and quality of the words and acts complained of, and the manner in which they are said and done, must all be considered.

Whether this preference for alleging cruel and barbarous treatment and indignities to the person, as causes for seeking a divorce, is due to the fact that women are more independent financially today, and feel that they do not have to put up with conduct on the part of their husbands which they formerly had to submit to, or whether it is due to the fact that parties are too impatient to be free and do not wish to wait the two years necessary for desertion to ripen into a cause of action, we leave to others.

We have also noticed in recent years a total lack of corroboration of libellant's testimony in many, if not a majority, of the cases which come before us. The lack of corroborating testimony has been commented upon by at least two masters in the reports we have examined this month. The case which is the subject of this opinion, strikingly illustrates the lack of corroborating testimony when such testimony was apparently available.

The causes of divorce alleged were cruel and barbarous treatment and indignities to the person. If the testimony of libellant, the only witness, is accepted as true, she is entitled to a decree on both grounds, for it reveals a course of treatment so cruel and inhuman as to be almost beyond belief. She describes one instance in which her husband threatened to kill her, came to the house with a shot gun and loaded it in the presence of her friend, Margaret Marks; he "put the gun right up to my chest and pushed me with the gun until I was against the wall. Mrs. Marks had nerve because she rushed and pulled me away from the gun and walked behind me up to her house which was in the same block and then called the police".

Margaret Marks is not called as a witness, nor is her absence accounted for.

Again, she testifies: "He used a riding boot to strike me with. He hit me on the legs, on the body, in fact, I was so badly bruised that I could not walk for a week. The next day Margaret came up to the house to see me and found me in bed, I was not even able to get up to make myself anything to eat. She called a taxi and took me up to her house and she nursed me until I was able to get on my feet."

Margaret is not called as a witness, nor is her absence accounted for.

This case, unfortunately, is not unusual in its lack of corroboration, but is characteristic of many divorce cases which come before us today.

We are aware of the line of cases which hold that a divorce will be granted on libellant's testimony alone, such as Baker v. Baker, 195 Pa. 407, English v. English, 19 Pa. Superior Ct. 586, Faunce v. Faunce, 20 Pa. Superior Ct. 220, and Krug v. Krug, 22 Pa. Superior Ct. 572.

There is also, however, another line of cases which hold that the evidence required to support a decree in divorce, must be clear and satisfactory: Wagner v. Wagner, 112 Pa. Superior Ct. 485, Kerr v. Kerr, 115 Pa. Superior Ct. 18, Putt v. Putt, 118 Pa. Superior Ct. 74, and James v. James, 126 Pa. Superior Ct. 479.

When the evidence shows that substantial corroboration of libellant's testimony is available and not produced, or the failure to produce it explained, it casts suspicion on all of libellant's testimony, and we do not have the clear and satisfactory proof required by the cases. When a witness who obviously knows something about the point at issue is not produced by the party who would normally call such witness, the trier of fact, be it judge or jury, may infer that the testimony of that witness would not be favorable to that party. We have found no case in the appellate courts in which the duty of a libellant to produce corroborating testimony is passed on or discussed, except Frantz v. Frantz, 134 Pa. Superior Ct. 481. In that case the lower court dismissed the libel, on the ground, inter alia, that libellant did not call his children to corroborate him. Respondent was represented, but filed no answer or offered no evidence. Upon appeal the judgment of the lower court was reversed and a divorce granted. In the opinion of the Superior Court, it is said (p. 487) :

"Reference is made in the opinion of the court below to the failure of libellant to call his children to corroborate his testimony. We do not think there was any absolute duty on the part of libellant to have called his

children to testify, nor do we think that such failure is indicative of the falseness of libellant's testimony."

This pronouncement must be read, however, in the light of the facts of the case, namely, that the court was speaking of the children of the parties, and in divorce cases children should not be required to testify against either parent, and also the record discloses that several witnesses corroborated the testimony of libellant.

In the lower courts some authority on the subject is found. In McMichael v. McMichael, 25 Dist. R. 677 (1916), an uncontested case, Judge Prather of Crawford County, discusses the matter in a well considered opinion. This was a divorce case brought on the ground of cruel and barbarous treatment. In the opinion Judge Prather said:

"The particular conduct and acts complained of all left physical marks or visible effects upon her body and health. The entire absence of corroboration is a circircumstance of suspicion that leaves her case in doubt as unproved."

See also Reed v. Reed, 28 Dist. R. 511.

We recognize, of course, that there are cases where the cause of divorce occurred long before the action was started, or occurred at a distance place, or the acts complained of were committed in private. In such cases corroborating evidence may be difficult or impossible to obtain. We are of the opinion, however, that in all cases where corroborating evidence of material facts is available it should be produced, and where the record discloses that it obviously is available, it must be produced, or its absence explained.

And now, April 4, 1946, the record is returned to the master, in order that an additional hearing may be held, at which the corroborating testimony shown by the evidence to exist, may be produced, or its absence accounted for.