Allen *v.* Allen, Appellant.

Argued April 19, 1949. Before RHODES, P. J., HIRT, RENO, DITHRICH, ARNOLD and FINE, JJ. (ROSS, J., absent.)

*Henry Kauffman,* with him *Louis Little,* for appellant.

*J. Harry Pershing,* with him *Adam B. Shaffer* and *Arthur D. Stevenson,* for appellee.

OPINION BY HIRT, J., July 26, 1949:

The parties were married in 1920; they separated in November, 1930, when the libellant left the respondent in their common home. He then, as now, was employed as a "pantryman" in the dining car service of the Pennsylvania Railroad. He was home from his various runs only every four or five days. The case was heard by a judge of the court below. Libellant testified that respondent, without cause, had terminated marital relations with him some years before the separation although they continued to live under the same roof; that respondent had threatened him and on at least one occasion had injured him bodily; that at times she drank to excess and her conduct was otherwise irregular in that she was improperly interested in other men, starting with a roomer within three years after the marriage. Libellant further testified that on returning to his home on the night of November 15, 1930, he found respondent in her bed with another man. This according to his testimony precipitated the final separation. Although the single charge of the libel is indignities, the lower court considered the above testimony of respondent's adultery as an indignity sufficient in cumulation with testimony of other misconduct to entitle libellant to a divorce on the ground alleged and entered a decree accordingly. This testimony was not admissible on the charge of indignities and should have been disregarded even though in evidence without objection.

Adultery in fact is an indignity in its gravest form. But the legislature wisely has seen fit to make adultery a separate and distinct cause of divorce and has pre-

scribed a procedure appropriate to the seriousness of the charge. One of the purposes of §9 of the Act of March 13, 1815, P. L. 150, 48 PS §169, is to prevent one, guilty of adultery, from marrying his paramour. The prohibition of that Act is not rhetoric merely; it imposes a personal incapacity on a respondent to marry the person with whom the adultery was committed. *Maurer v. Maurer*, 163 Pa. Superior Ct. 264, 60 A. 2d 440. Moreover, §38 of the Act of May 2, 1929, P. L. 1237, as amended, 23 PS §38, requires that such paramour be named in the libel and, as corespondent, be given notice of the charge so that the aspersion may be disproven if false. The mandates of the divorce law as to the acts, which are evidence of adultery, cannot be avoided by treating them as incidents merely of a course of conduct justifying a decree of divorce on the charge of indignities alone.

The relevant proofs consist for the most part in the libellant's testimony of his wife's misconduct and her categorical denials of all of the charges. The judge before whom the case was tried, accepted the testimony of libellant as true and found that "the respondent was not worthy of belief". The rule is that when witnesses, who are equally interested, flatly contradict each other, the conclusion of the trial judge who heard them as to which is to be believed is not to be lightly disturbed. *Wick v. Wick*, 352 Pa. 25, 42 A. 2d 76. For the most part we accept the judgment of the trial judge on the issue of credibility. But after excluding the evidence of the incident of November 15, 1930, which spells adultery or nothing, as we are bound to do in our independent review of the testimony, we are of the opinion that libellant has not made out a case on the charge of indignities.

The long delay in bringing the action after the final separation in 1930, in itself, casts some doubt on the good faith of libellant in seeking a divorce on the ground alleged. Cf. *Garroway v. Garroway*, 163 Pa. Superior

Ct. 317, 61 A. 2d 379. Libellant's bald statement that respondent came home intoxicated once or twice each week, does not sustain the charge. And we do not accept his testimony at face value that on one occasion, when he embraced respondent, she bit him on the nose out of pure meanness and without provocation, inflicting an injury which required medical attention. Libellant seeks to invoke the doctrine of *Lowe v. Lowe,* 148 Pa. Superior Ct. 439, 25 A. 2d 781, and *Wick v. Wick,* supra, to the effect that conduct of a wife with respect to other men, although not sufficient to support a charge of adultery, may be considered as a form of personal indignity rendering the husband's condition intolerable and life burdensome. The proofs do not bring the case within the rule. Libellant testified that respondent took a roomer into their home in 1923 and stated "the action between them two I didn't like". He forced the roomer to move. That is the extent of the testimony as to her alleged interest in the roomer and does not prove misconduct. The testimony, excluding the proofs of the adultery, refers to only one other incident of her association with another man. On a Sunday morning in 1932 she was seen in an automobile driven by a man who lived in her neighborhood. The automobile had been wrecked in a collision with a street car. Respondent said she had accepted an offer of a ride to her home just before the accident, and there is no proof to the contrary or of any misconduct. Libellant testified that respondent threatened him with a knife on two occasions. On the first of them she went to a railroad station to check on his conduct according to her testimony and an argument ensued. He said she drew a penknife. It is a fair inference that libellant then was not altogether on the defensive for both were arrested and both spent the night in jail. Libellant testified that following the incident of November 15, 1930, his wife ran from her bedroom to the floor below and sat there with a knife in her hand. This she

denied. But even the libellant's testimony does not charge her with aggression, but indicates that she had the knife for her own protection merely, against possible violence from the libellant provoked by her adulterous conduct.

In our view of the testimony libellant is entitled to a divorce for adultery or not at all.

Decree reversed.

---

CONCURRING OPINION BY RHODES, P. J., September 27, 1949:

I concur in the result reached in the majority opinion as the evidence was insufficient to sustain libellant's charge of indignities to the person, which was the single charge in the libel. But I do not agree that the testimony of libellant that he found respondent in bed with another man on the night of November 15, 1930, was inadmissible. In *Hexamer v. Hexamer*, 42 Pa. Superior Ct. 226, a divorce on the grounds of cruelty and indignities was refused, although the respondent was guilty of flagrant and shocking misbehavior constituting a long course of conduct. This Court has consistently held, in subsequent decisions, that a wife's affair with another man, in itself, may constitute an indignity, and that conduct by a husband with respect to other women, although not sufficient to support a charge of adultery, may be considered as a form of personal indignity to the wife rendering her condition intolerable and life burdensome. *Blansett v. Blansett*, 162 Pa. Superior Ct. 45, 56 A. 2d 341; *Macormac v. Macormac*, 159 Pa. Superior Ct. 378, 48 A. 2d 136; *Smith v. Smith*, 157 Pa. Superior Ct. 582, 43 A. 2d 371; *Lowe v. Lowe*, 148 Pa. Superior Ct. 439, 25 A. 2d 781; *Dearth v. Dearth*, 141 Pa. Superior Ct. 344, 15 A. 2d 37. See, also, *Wick v. Wick*, 352 Pa. 25, 42 A. 2d 76; *McKrell v. McKrell*, 352 Pa. 173, 42 A. 2d 609.

Unquestionably, respondent's alleged misconduct in the presence of libellant would constitute an indignity; and the fact that the circumstances indicated adultery does not make libellant's testimony inadmissible on the charge of indignities. By implication the majority opinion holds that the evidence in question, although circumstantial in nature as to adultery, supports the inference that the adulterous act actually was committed with such a high degree of persuasiveness that it becomes equivalent to direct evidence of adulterous intercourse. In this connection the majority opinion says: ". . . the evidence of the incident of November 15, 1930, . . . spells adultery or nothing . . ." I do not think admissibility of evidence and the sufficiency of evidence should be so confused. The degree of persuasiveness of circumstantial evidence cannot be taken as a valid criterion of admissibility. In a divorce case, the court is not in a position to consider the question of sufficiency until all the admissible evidence has been put in the record. In the present case the majority opinion considers the question of sufficiency as a prerequisite to determination of the question of admissibility.

Although I think the questioned testimony of libellant was admissible, I am of the opinion that he has failed to make out a case. To establish the ground of indignities, it is necessary to show a course of conduct over a substantial period of time rendering the condition of the libellant intolerable and his life burdensome. An isolated incident does not establish a course of conduct.

Evidence that does not show such a course of conduct is insufficient to sustain the charge of indignities as alleged in the libel. On the other hand, one act of adultery is sufficient cause for divorce.

Judge DITHRICH joins in this opinion.